Grafton,  }
July 2, 1904. }

## LITTLETON v. BERLIN MILLS CO.

## BERLIN MILLS CO. v. FARNHAM.

The statute empowering the town of Littleton to establish water-works (Laws 1903, c. 255) does not authorize the taking of the property of an unknown owner, or of one with whom the town is unable to agree as to damages, by mere entry and seizure, but only upon the proceedings for condemnation therein specified; and an entry upon such premises in advance of judgment of condemnation is tortious, unless a bond conditioned on the payment of all damages is filed, as required by section 3 of the act.

PETITION, by the town of Littleton, for the assessment of damages for land and other property taken for a reservoir and pipe line for water-works, under chapter 255, Laws 1903; and TRESPASS *quare clausum*, by the defendants in the first suit, against Loring N. Farnham, who justifies as the agent and servant of the town. Transferred from the November term, 1903, of the superior court by *Wallace*, C. J.

*Batchellor & Mitchell*, for the town of Littleton.

*Drew, Jordan, Buckley & Shurtleff*, for the Berlin Mills Company.

*Edgar W. Smith* (of Vermont), for Loring N. Farnham.

PARSONS, C. J. The plaintiffs in the first case, the town of Littleton, allege that they have appropriated for the purposes of the public water system which they have been authorized to construct (Laws 1903, c. 255) two tracts of land specifically described in the bill; that at the time of their appropriation of the same the owners were unknown; and that since ascertaining that the defendants, the Berlin Mills Company, owned the same, they have been unable to agree with them upon the damages to be paid therefor. The prayer of the bill is that the property and rights of the defendants taken for the purposes authorized by the act be laid out, and the damages determined. The defendants demur upon the ground that upon the allegations of the bill the plaintiffs did not rightfully enter upon their lands, but were and are trespassers upon the same. The section of the empowering act under which the plaintiffs have brought the present proceeding is as follows, so far as it is material to the present inquiry: "Sect. 3.

In case the town . . . shall not be able to agree with the owner of any property or right taken for the purposes of this act, for the damages to be paid therefor, or in case the owner is unknown, either party may apply to the superior court for the county in which said property or right is situated, to have the same laid out and damages determined; . . . *provided*, however, that entry upon and taking of property, rights, and estate, laid out and taken for the purpose of this act, shall not be postponed by reason of any failure of the parties to agree upon the compensation to be paid, or by reason of proceedings being instituted by either party for the assessment of damages as provided in this act, by the said town or district, as the case may be, but said municipal corporation may enter upon, take, and occupy such property, rights, and estate, by filing a bond to the satisfaction of the superior court or the clerk thereof, conditioned on the payment of all damages that may be afterwards agreed upon or allowed in any case." The plaintiffs have not filed a bond. Because of the failure to file such bond, the defendants contend that the plaintiffs' entry and occupation is unauthorized and a trespass.

In order to determine, for the purposes of the town's petition and the trespass suit of the Berlin Mills Company against Farnham, the legality of the entry and occupation by the town, the case was transferred by the superior court without ruling. Counsel for Farnham have participated in the argument, and the question has been treated as presented upon agreement as to the facts in both cases, without reference to its materiality as a ground for demurrer in the first case.

When, about May 1, 1903, the town entered upon the land of the Berlin Mills Company, the right of occupation was a part of the owners' property right. Unless prior to or at the time of the entry this property right was transferred to the town, their entry was in violation of the owners' right; and until a transfer to the town of some portion, at least, of the owners' exclusive right is shown, the occupation by the town must be held tortious. The town were authorized to purchase the right. They have not done so. No decree of condemnation has transferred the right to them, either upon adjudication or payment of damages. Not having filed a bond, they can claim nothing under that provision of section 3. Their sole contention is, that by sections 1 and 2 of the act under which they claim to have proceeded this property right was transferred to them.

By section 1, the town are authorized to " take, purchase, and hold, in fee simple or otherwise, any real or personal estate and any rights therein necessary to carry into effect the purposes of

this act"; and by section 2, they are "authorized and empowered to enter upon, take, and appropriate any stream, spring, or pond" within certain limits, and to "dig ditches and canals, make excavations, build dams and reservoirs, through, over, in, or upon any land or enclosure, . . . which may be necessary for said aqueduct to pass, or said excavations, dams, reservoirs or water-works to be or exist."

These sections do not contain any provision for compensation to the owner for the lands or rights appropriated. The only power conferred by these sections alone is, therefore, the power to purchase. To authorize the seizure of the property of the citizen for public uses, without providing compensation, is beyond the power of the legislature. The contingency that the town might not be able to secure by purchase the necessary rights for the purposes of the act was foreseen, and is provided for in section 3, under which the petition of the town is brought and which has been already quoted. In case the right in question cannot be obtained by private treaty as to damages,—taken by purchase,— the town are authorized to apply to the court to have the same "laid out" and the damages determined. If it was understood that the entry upon or seizure of property which the town were unable to purchase constituted a taking or condemnation of the property under the power of eminent domain, without an adjudication of the question of necessity made essential under sections 1 and 2, and without any record or specification of the interest taken, there would have been no occasion in section 3 to provide for anything beyond an assessment of the damages for the right so condemned. The bare entry, without some provision for a specification of the extent of the right proposed to be taken, would in many cases be too indefinite a declaration of purpose to convey any information as to what was in fact taken. It now appears by the bill that upon one tract the town proposes to take only a narrow strip instead of the whole. It is not probable so indefinite and misleading a process was understood to be provided for the divestiture of the owner's title. If it had been intended to authorize the town to take property by mere entry and seizure, it is probable some provision would have been made for a specification and record of the extent of the right taken. The provision that, in case of inability to secure the right by purchase, application might be made to the superior court to have the right desired "laid out," was probably understood to have some meaning.

In chapter 81, Laws 1870, authorizing the city of Dover to construct water-works, by section 1 the city are authorized to take, purchase, and hold real estate, and to erect, construct, and maintain such dams, reservoirs, and buildings as may be necessary.

Section 2 is as follows; "If said city shall not be able, in the opinion of the board of aldermen of said city, to obtain and secure, on reasonable terms, the necessary lands and rights of water for said works, including the right to lay and maintain pipes where required, the said city may apply to the county commissioners for the county of Strafford for the assessment of damages to the owner of such lands or rights of water; and said commissioners, after notice to the parties interested and a hearing, if it shall appear to them that any land, rights of water, or rights to lay and maintain pipes are required by the city for said water-works, and cannot be purchased or secured on reasonable terms, shall assess and award damages to the owner of such land or rights adjudged by them to be required by the city for the purpose of the water-works, which assessment and award shall be in writing and filed in the office of the city clerk of said city, as soon as may be after the same is completed; and upon payment or tender to the owner of the sum so assessed, the rights of the city to the same shall become vested and complete." Substantially similar language was used to confer like power upon the city of Manchester. Laws 1871, *c.* 70, *ss.* 1, 3. The charter of the North Shore Water Company (Laws 1901, *c.* 290, *s.* 2) provides in case of inability to agree upon the damages, or if the owner is unknown, "that either party may apply to the supreme court . . . to have the same taken, appropriated, and condemned for the purpose required, and the damages determined." See, also, Laws 1895, *c.* 204, *s.* 2, and Laws 1897, *c.* 148, *s.* 3, where like expressions are found.

Generally, in such charters or authorizations the language has been substantially identical, authorizing either party, in case of inability to agree or the owner is unknown, to apply to the supreme court to have the same laid out. See Laws 1903, *c.* 207, *s.* 5; *Ib.*, *c.* 259, *s.* 8; *Ib.*, *c.* 272, *s.* 3; *Ib.*; *c.* 318, *s.* 3; Laws 1901, *c.* 197, *s.* 2; *Ib.*, *c.* 253, *s.* 5; *Ib.*, *c.* 272, *s.* 5; *Ib.*, *c.* 289, *s.* 4; *Ib.*, *c.* 291, *s.* 3; Laws 1899, *c.* 187, *s.* 4; *Ib.*, *c.* 202, *s.* 3; Laws 1897, *c.* 138, *s.* 5; *Ib.*, *c.* 155, *s.* 4; Laws 1895, *c.* 164, *s.* 2; *Ib.*, *c.* 169, *s.* 2; *Ib.*, *c.* 177, *s.* 2; *Ib.*, *c.* 195, *s.* 2; *Ib.*, *c.* 206, *s.* 2; *Ib.*, *c.* 259, *s.* 3; Laws 1893, *c.* 209, *s.* 5; *Ib.*, *c.* 244, *s.* 5; *Ib.*, *c.* 272, *s.* 5; *Ib.*, *c.* 303, *s.* 4; Laws 1887, *c.* 177, *s.* 4. A few instances are to be found where the expression "laid out" is omitted, the adjudication required relating solely to damages. In the Concord act (Laws 1871, *c.* 69), the city is authorized to take such rights as may be deemed necessary, and the damages only are required to be judicially determined. See, also, Epping Water Company (Laws 1899, *c.* 216, *s.* 3) and Plymouth Village Fire District (Laws 1893, *c.* 228, *s.* 3; Laws 1901, *c.* 183, *s.* 3). In the latter case, it is especially provided that the right

taken is to vest upon payment or tender of the damages assessed. In the charter of the Berlin Water Supply Company (Laws 1901, c. 292, s. 5) it is provided that in case of inability to agree as to the damages, or the owners are unknown, "said corporation shall file with the register of deeds . . . a description of the same, together with the statement that the same are taken by said corporation for said purpose; and shall give to the owner or owners, if known, a copy thereof, after which said corporation shall be entitled to the possession." A provision for the assessment of damages follows. Whether such procedure would constitute a valid taking or not, the whole is evidence that it was not understood that general authority to enter and appropriate was of itself sufficient to transfer the right of possession by mere entry.

While it may be that all the acts granting similar rights, a few of which are cited, have not been examined, it is not probable that the expression "laid out" would have been used in substantially all cases where precise language defining the method of taking and appropriation was not used, if it had not been understood to be a technical expression to the same effect. In only one charter examined is the expression omitted (Laws 1899, c. 216), without the use of some substitute or other language from which a reason for its omission can be inferred. A perusal of the charters referred to appears to establish that, by the general provisions to be found in the early part of the acts granting power to enter upon and appropriate necessary land, water, and rights, it was not understood that arbitrary power of seizure or entry was granted. The acts all indicate that it was understood that as against the owner the right to so enter must be obtained by purchase, or as the result of legal procedure and a favorable adjudication.

There is also a constant reference to the procedure in establishing highways. The words "laid out" are undoubtedly derived from that procedure, and the term itself and the direct reference indicate that the method of the divestiture of private title in road-laying proceedings was within legislative contemplation in this class of legislation. The decision of the selectmen laying a highway is a judgment, and includes both a finding upon the question of the public good and a location upon the ground of the new way. *Horne* v. *Rochester*, 62 N. H. 347, 348. The public acquire no right of entry upon the land taken for a highway until final judgment laying the way. *Morse* v. *Wheeler*, 69 N. H. 292. Nor, as a general rule, can the land be appropriated for the highway until the damages are paid or tendered. P. S., c. 71, ss. 4–6. The term "laid out" is of familiar use in the taking of land for railroads, and the procedure thereunder is evidence of the legislative meaning when procedure of that character was prescribed.

In such cases the corporation is authorized to locate its road, subject to petition by any landowner for a change of location, and to obtain title by deed to any lands which it deems necessary for its road. P. S., *c.* 158, *s.* 8. If such deeds cannot be obtained, application may be made for an assessment of damages. P. S., *c.* 158, *s.* 9. The damages must be paid, or tendered, or deposited for the landowner, before entry is made upon the land to construct the road, except by the owner's consent. P. S., *c.* 158, *ss.* 18, 19. From all the evidence, it is clear that by the permission given in certain cases to apply to have the desired right laid out was meant an application to have the desired right, in the language before quoted (Laws 1901, *c.* 290, *s.* 2), " taken, appropriated, and condemned." The words " laying out " and " taking," in a statute relating to eminent domain, were held to have the same meaning in *Charlestown Branch R. R.* v. *Commissioners*, 7 Met. 78, 84. The legislative intention seems clear, therefore, to authorize the plaintiffs to secure the necessary rights by purchase if they could; if not, by condemnation. Until they acquired the right in one way or the other, the whole title necessarily remained in the defendants. If it had been understood that by sections 1 and 2 of the act a taking would be effected by entry and appropriation and seizure, the provisions of section 3 for a taking by judicial procedure would be purposeless. Under the flowage act, the mill-owner is liable in *trespass* until an adjudication under the act has been obtained and the damages paid. *Ash* v. *Cummings*, 50 N. H. 591. No consideration appears upon which a different result can be reached in this case.

The same result is obtained if attention is confined solely to the act under which the town proceeded. The right of entry, in advance of judgment of condemnation, is there expressly given by the last clause of section 3, upon the filing of a bond " conditioned on the payment of all damages that may be afterwards agreed upon or allowed in any case." If the legislature understood that the language of sections 1 and 2 of the act granted an unconditional right of entry, the provision giving such a right upon filing a bond would not have been inserted. The provision establishes that the right claimed was not intended to be given, and was not granted. By the first clause of section 9 [7] of the act, the town were " authorized to take or purchase the franchise and property of the Littleton Water & Electric Light Company," as in sections 1 and 2 they were authorized to purchase, take, and appropriate land; but the latter part of the section contains the following language: " Should said town . . . be unable to agree with said Water & Light Company as to the price to be paid for their said property, then the same may be *taken* as is provided in section 3." In

the act itself, therefore, the procedure of this section is defined as a taking. It is plain that the expressions of sections 1 and 2 and the first lines of section 9 were merely intended to confer power of action upon the corporation to purchase or to take in the prescribed method, and were not intended to confer an arbitrary power to seize the property of others, without notice or definition of the extent of property thereby wrested from the owner.

It is suggested that the act does not require a bond to an unknown owner; but the bond intended was not an individual bond to each owner, but was a general bond for the benefit of all persons. It was to be "conditioned on the payment of *all damages* that may be afterwards agreed upon or allowed in *any case.*" The plaintiffs could not agree with an unknown owner; an agreement requires at least two parties, as well as a union of minds. If they could not agree for either reason, the process provided by the act was the commencement of proceedings for condemnation. Then it was further provided that the pendency of the proceedings should not delay the progress of the work if a bond were filed. The provision was undoubtedly for the benefit of the town. The only difficulty arises from their failure to take advantage thereof. No question is raised as to the constitutionality of the act as here construed. There is therefore no occasion to consider whether the legislature had power to do something which it is very plain they did not intend to do.

The question of waiver suggested by counsel is mainly one of fact, and will not probably present any difficult question of law when the facts are found.

*Case discharged.*

All concurred.