Belknap,
June 2, 1908.

## WRIGHT *v.* PEMIGEWASSET POWER CO.

A proceeding for the assessment of damages under the flowage act is brought for the purpose of ascertaining the value of the rights sought to be acquired; and interest upon the sum awarded the landowner is to be computed from the time his land was flowed.

The provision that fifty per cent shall be added to the verdict of the jury in a proceeding for the assessment of damages under the flowage act is not repealed by section 2, chapter 50, Laws 1893.

That the periodical recession of water from land taken for flowage occasions disagreeable odors near the dwelling-house of the landowner is a fact which may be considered in the assessment of his damages.

PETITION, for assessment of damages under the flowage act. Transferred from the March term, 1907, of the superior court by *Stone*, J.

The plaintiff owns a farm bordering on the Pemigewasset river, which the defendants overflowed by means of a dam built in 1902 and 1903 on their land further down the stream. They made no settlement with the plaintiff, and in March, 1905, she brought an action at law for damages. In August, 1907, this petition was filed by agreement of parties as an amendment to the original action. It was then agreed that the defendants' dam was a public benefit, and they joined with her in requesting the court to ascertain the value of the easement they wished to acquire. It was also agreed that the court should adjust the question of interest. The plaintiff was permitted to show that the flowing of her land caused disagreeable odors whenever the water receded.

The jury having returned a verdict for the plaintiff, the court added fifty per cent thereto and interest from February 7, 1903.

The defendants excepted (1) to the addition of interest, (2) to the addition of fifty per cent to the verdict, and (3) to the admission of evidence as to disagreeable odors.

*Streeter & Hollis*, for the plaintiff.

*Sargent & Niles*, for the defendants.

YOUNG, J. 1. The question raised by the defendants' first exception is whether it was permissible in any view of the facts to compute interest on the verdict from February 7, 1903, that being the date upon which the defendants flowed the plaintiff's land. In answering this question it will be necessary to consider the nature of this proceeding. Two views have been presented : one that it is an action to assess the damages the plaintiff has sustained because of the defendants' illegal acts, and the other that it is to ascertain the value of the flowage rights the defendants wish to acquire in the plaintiff's land. It is manifest that the latter view is the correct one, for otherwise it would not be an answer for the defendants to disclaim an intention of acquiring any rights in the land. It is well settled that a petition of this nature will be dismissed where a millowner files a disclaimer, and that the landowner will thereupon be remitted to an action at law to recover the damages he has sustained by reason of the millowner's acts in flowing his land. *Gordon* v. *Paper Co.*, 72 N. H. 346 ; *Jones* v. *Whittemore*, 70 N. H. 284 ; *Mitchell* v. *Electric Co.*, 70 N. H. 569, 572; *Chapman* v. *Company*, 67 N. H. 180 ; *Hovey* v. *Perkins*, 63 N. H. 516, 526 ; *Town* v. *Faulkner*, 56 N. H. 255; *Pollard* v. *Moore*, 51 N. H. 188.

Inasmuch as the purpose of the proceeding is to ascertain the value of the flowage rights the defendants wish to acquire, and not to assess the damages the plaintiff has sustained by reason of the defendants' illegal acts, it would seem that the question whether the court erred in computing interest on the verdict from the time the land was in fact flowed would be solved by ascertaining whether on that date (February 7, 1903) the defendants knew or should have known that their dam would overflow the plaintiff's land, and intended to acquire flowage rights by condemnation proceedings. If they did, it was their duty to then pay her for the rights they wished to acquire. For their failure to do so, interest should be added from that date; for interest is given as damages for the unlawful detention of money. *Chauncy* v. *Yeaton*, 1 N. H. 151, 158 ; *Felton* v. *Fuller*, 35 N. H. 226, 229 ; *Adams* v. *Blodgett*, 47 N. H. 219 ; *Thompson* v. *Railroad*, 58 N. H. 524 ; *Snow* v. *Perkins*, 60 N. H. 493.

The plaintiff's land is on the Pemigewasset river above the defendants' dam and is flowed thereby. The defendants knew or ought to have known that, as a direct consequence of their acts, her land would be flowed to the extent that it was below the level of the water as raised by the dam. If the dam was a public benefit, and the defendants intended to condemn the land when the dam was built and the land was flowed, they acquired the right to take it under the statute. *Lebanon* v. *Olcott*, 1 N. H. 339; *Ash* v. *Cummings*, 50 N. H. 591, 622. The right attached when the dam was built with such an intention (P. S., c. 142, s. 19), and their duty to compensate the plaintiff arose when their desired rights were determined or located by actually flowing the land. P. S., c. 142, s. 13. As the defendants did not settle with the plaintiff at that time or within thirty days thereafter, or take the necessary steps to have her land condemned, she could have brought an action at law against them to recover the damages she sustained (*Roberts* v. *Company*, 73 N. H. 121), or have maintained a proceeding under the flowage act in case the defendants joined with her in asking the court to ascertain the value of the rights they wished to acquire. By joining with her in the proceeding and making such a request, they acknowledged their intention to acquire rights of flowage by condemnation proceedings, and furnished evidence from which it could be found that they entertained such an intention at the time the flowing was begun. Under these circumstances, the court was justified in computing interest on the verdict from the time the plaintiff's land was flowed.

2. The question whether section 2, chapter 50, Laws 1893, repeals the provisions of chapter 142, Public Statutes, relative to adding fifty per cent to the value of the easement which a mill-owner acquires when land is flowed under the provisions of the latter chapter, was considered in *Concord etc. Co.* v. *Clough*, 69 N. H. 609, and the following opinion by *Wallace*, J., was announced: " The Public Statutes (*c.* 142, *ss.* 14–17) provide that upon a petition for the assessment of damages under the flowage law the damages will be assessed by the jury if either party so elects, otherwise by a committee of three disinterested persons, and that judgment will be rendered upon the report of the committee or verdict of the jury, with fifty per cent added. Section 1, chapter 50, Laws 1893, provides that the committee or the jury, in estimating the damage done under the flowage law, 'shall take into consideration any damage done to other land of the party flowed, as well as the damage occasioned to the land actually occupied, and the court shall render judgment upon the sum returned as the verdict of the jury.' Section 2 repeals so much

of chapter 142 of the Public Statutes as is inconsistent with this act. The purpose of the act of 1893 was to make it certain that indirect damage occasioned to other land of the party flowed, not actually covered by water, as well as damage occasioned to land actually occupied, should be included in the assessment of damages for flowage under chapter 142 of the Public Statutes. There is no evidence of any intention on the part of the legislature to repeal the provision of the law for adding fifty per cent to the damages assessed. If there had been any such intention, it would have been expressed. There is nothing inconsistent with the purpose of the amendment to provide for the assessment of indirect damages, nor with the language employed to express that purpose, and the provisions of chapter 142, Public Statutes, that the damages when assessed should be increased fifty per cent."

The Clough case was finally disposed of on another ground, and there is nothing in the record to show why this part of the opinion was not reported. But whatever the reason may have been, it is clear, when the purpose of chapter 50, Laws 1893, is considered, that the legislature did not intend by section 2 of that act to repeal section 17, chapter 142, Public Statutes, adding fifty per cent to the verdict. The manifest purpose of section 1 of the act of 1893 is to make it certain that the landowner shall recover all the damages he sustains, both direct and indirect; and all that section 2 repeals is so much of chapter 142, Public Statutes, as is inconsistent with this purpose. It cannot be found, therefore, that the provision of chapter 142 adding fifty per cent to the verdict is repealed by section 2 of the act of 1893, unless it is inconsistent with an intent to enable landowners whose land is overflowed to recover all the damages they sustain by reason thereof.

It is clear that the fifty per cent provision of chapter 142, Public Statutes, instead of being in conflict with section 1, chapter 50, Laws 1893, tends to promote the purpose of that chapter, and that the intent of both is to make it certain that those whose lands are taken under the provisions of the flowage act shall recover all the damages they sustain because of such taking. The act of 1893 repeals those provisions of the earlier statute, and those only, which are inconsistent with the legislative intent that parties whose lands are taken under the flowage act shall receive full compensation for all the loss they sustain, whether the flowing is the direct or the indirect cause of the damage.

3. The measure of the plaintiff's damages is the difference between the value of her farm after the defendants had flowed it and what it would have been worth on that date if their dam had not been built. It was competent, therefore, for the jury to consider all the consequences which would probably result from flow-

ing the plaintiff's land, if the defendants used ordinary care to do no unnecessary damage which would have any tendency to reduce the value of the farm. One of the probable consequences of flowing the land was that the vegetable matter in the soil would decay and produce disagreeable odors whenever the water receded. The land was near the plaintiff's dwelling-house, and it is common knowledge that such odors would make the house less desirable for human habitation, and consequently less valuable. The odor, therefore, was something the jury should consider in ascertaining the value of the flowage rights the defendants wished to acquire.

*Exceptions overruled.*

Walker and Bingham, JJ., dissented on the second question: the others concurred.