Strafford, }
Nov. 4, 1919. }

NEWMARKET ELECTRIC COMPANY *v.* GEORGE L. CHASE & a.

SAME *v.* JOSEPH SOPEL & a.

Upon a petition by a mill owner for assessment of damages under the flowage acts, filed prior to actual flowage, under Laws 1911, *c.* 114, his stipulation that he will not flow before a certain date is to be considered in reduction of damages, by the committee in making their award.

The award must be regarded as showing the amount justly due at the time it is rendered.

In rendering judgment upon the award, interest is to be computed from the date of filing it and not from the filing of the petition.

Where judgment is entered upon an award made in pursuance of Laws 1911, *c.* 114, an execution thereon cannot be stayed until flowage occurs but is immediately enforceable.

PETITIONS, for the assessment of damages under the flowage acts, filed prior to actual flowage under the provisions of Laws 1911,

*c.* 114. The petitions were heard by a committee, whose report was accepted and judgment rendered thereon, with 50 per cent added. At the hearing before the committee the petitioner stipulated that it would not flow before July 1, 1919, and that fact was considered in making up the award.

The petitioner moved for a stay of execution until it flowed the land, and the defendants moved for interest from the date of the petitions. The disposition of these motions was transferred, without a ruling, from the February term, 1919, of the superior court, by *Marble*, J.

*Shute & Shute* and *Hughes & Doe* (*Mr. Richard E. Shute* orally), for the plaintiff.

*Scammon & Gardner* and *Fred H. Brown* (*Mr. Frank A. Batchelder* orally), for the defendants.

PEASLEE, J. The motions pending in these cases raise certain questions touching the applicability of the decisions under the original flowage act (P. S., *c.* 142, *ss.* 12–18), as amended in 1893 (Laws 1893, *c.* 50), to proceedings under Laws 1911, *c.* 114. The latter act provides that one proposing to erect a dam "may file in the superior court a petition, setting forth the location, height, and description of the proposed dam and applying for flowage rights in land to be flowed thereby, and if it shall appear that the erection of the dam is or may be of public use and benefit, then the court shall proceed to the assessment of damages for land flowed as nearly as may be in accordance with the provisions of" the existing flowage acts. *Ib.*, *s.* 1.

Under the earlier statute the damages are assessed as of the date of flowage, and interest is computed from that time. A preferential right in the stream is obtained when the dam is erected with intent to flow, and the duty to pay arises as soon as the extent of the right is determined or located by flowing. *Wright* v. *Company*, 75 N. H. 3. Under the act of 1911, the rights to be taken are defined or located by the description contained in the petition. Since the proceedings are to conform "as nearly as may be" to those under the earlier statutes, it is argued on one hand that interest should be computed from the date of the petition, because that document defines the rights which were located by actual flowage under the old law. On the other hand it is argued that the damages are payable only when

flowage begins, because that was the rule under the Public Statutes.

The rule of damages is compensation for the rights taken. *Dolbeer v. Company*, 72 N. H. 562. If this is correctly applied throughout the proceeding the date from which interest on the award is computed is immaterial. It is only important that the same rule be applied by those who assess the damage and those who compute the interest on the amount found.

The rule being compensation, and all items having to be brought to a common date in the assessment, interest to that date is added to all overdue items. On the other hand items not yet due are discounted to the same date. In this way the present worth of the rights to be taken and paid for is accurately arrived at. *Barker v. Company*, 78 N. H. 571, 573.

Nor is it very material upon the question of assessment to ascertain when full title to the right of flowage passes. The right being a mere easement, the rest of the title remains in the landowner, and he can use the property accordingly. If technically the right passed to the mill owner upon filing the petition, the fact would remain that it could not be exercised until the dam was built; and in the meantime the landowner would have some use of the property. From the filing of the petition the land is subject to an inchoate claim, and from the time of payment and flowage, to a perfected and exercised right. The question for the assessors is: How much of value has all this taken from the landowner? The fact that the owner's use of his land may have been limited by the incumbrance originated by filing the petition may add to his loss, while the fact that he will have some use of the land until actual flowage takes from the damage.

In this proceeding the damages are assessed before occupancy by the petitioner. In so making the assessment some future point of time, when the right will be perfected and flowage occur, must be taken into account. If the project were of such magnitude that flowage could not ensue for five years, that fact would be considered in fixing the present value of the landowner's loss. The mill owner having applied for the acquisition of rights, it is natural to infer, in the absence of evidence to the contrary, that he will use them as soon as perfected, that is, upon rendition and satisfaction of judgment. If he desires to reduce the damages, because of the probable lapse of time before flowage, he can protect himself by a stipulation that he will not flow before a certain date. This was the course

taken in the present case, and the fact was properly considered by the committee in making their award.

"In rendering judgment for the debt or damages found by verdict, report of an auditor, or otherwise, interest shall be added from the time of such finding to the rendition of judgment." P. S., c. 228, s. 1. A verdict "must be regarded as showing the amount justly due at the time it is rendered." *Johnson* v. *Railroad*, 43 N. H. 410, 411; *Wentworth* v. *Portsmouth*, 68 N. H. 392. There is nothing in the report to show that this rule was not followed by the committee in making up their report, which stands "like the verdict of a jury found upon the same facts." *Pollard* v. *Moore*, 51 N. H. 188, 191.

The application of a different rule in *Wright* v. *Company*, 75 N. H. 3, arose from an agreement that the court should adjust the matter of interest. In that situation the jury merely assessed the damage for taking, and the court added interest from that date. In the absence of such agreement, the jury would have been instructed to add interest from the date of taking to the time the verdict was rendered, and the verdict would have borne interest from its rendition. There being no evidence of a departure from the established practice in the present case, interest should be computed from the date of filing the award.

The petitioner's motion that execution be stayed until it flows the land, is based upon the idea that the whole proceeding is merely preliminary, and can be abandoned by it at pleasure. If execution could be stayed until flowage occurred, one could never issue if the petitioner abandoned the project. It seems evident that it was not the purpose of the act of 1911 to permit such a result. It is settled that under the old flowage law the mill owner could not abandon the proceeding after the committee had made its report. *Pollard* v. *Moore*, 51 N. H. 188. He "cannot lie by and take the chances of a favorable award until after the damages are assessed." *Jones* v. *Whittemore*, 70 N. H. 284, 286. If there had been a legislative intent to establish a different rule under the new law, it would have been expressed. The procedure asked for in the petitioner's motion would not conform "as nearly as may be" to an assessment under the old law.

It is insisted that the provisions of Public Statutes, c. 142, s. 18, that the mill owner shall have no title, nor be relieved from any liability, until the damages are paid, is applicable to this proceeding. Hence, it is said, that as a corollary he need not pay until he flows the land. This is a plain *non sequitur*. Providing that title shall

not pass until payment is made falls far short of saying that payment need not be made until property rights have been invaded. Section 18 merely reserves to the landowner his constitutional right to retain and defend his property until compensation has been made. *Ash* v. *Cummings*, 50 N. H. 591, 616. A provision that the mill owner might lawfully invade the landowner's property, if he paid promptly after the invasion, would be contrary to the whole theory of how property may be taken for *quasi* public uses by individuals or private corporations. The trend of all our decisions is that in such cases payment, or its equivalent, must be made in advance of the acquisition of the desired rights. *Ash* v. *Cummings, supra; Orr* v. *Quimby*, 54 N. H. 590; *Littleton* v. *Company*, 73 N. H. 11. Payment must precede the taking. Until payment is made the landowner can treat the flowage as an invasion of his rights. *Spencer* v. *Company*, 78 N. H. 468. Under the flowage act the mill owner must for a time act as a wrongdoer (if the landowner elects so to treat him, *Dolbeer* v. *Company*, 72 N. H. 562) before he can acquire flowage rights. Until he has obtained and paid an assessment of the damage the flowage causes, he is liable in trespass. *Littleton* v. *Company*, 73 N. H. 11, 16; *Roberts* v. *Company*, 73 N. H. 121; *Wright* v. *Company*, 75 N. H. 3; *McMillan* v. *Noyes*, 75 N. H. 258. The act of 1911 was passed at the next session of the legislature after the announcement of the decision in the case last cited. Its evident purpose was to afford means whereby such a situation might be obviated, if the mill owner so desired. It plainly contemplates payment before entry, and not at or after such event.

The provision of Public Statutes, c. 142, s. 16, that upon acceptance of the report the court "shall render judgment thereon," is applicable here. And this means a judgment collectible in the ordinary course of procedure. If the mill owner does not wish to pay until after flowage he can erect his dam, flow, and proceed under the provisions of the Public Statutes. In so doing he subjects himself to the litigation typified by several late cases. If he desires to avoid these complications and annoyances he may elect to proceed under the act of 1911. When he takes the latter course, files his petition, goes to trial and submits his case to the committee, whose report is accepted by the court, he must be prepared to pay the amount assessed as he would any other verdict against him. The petitioner's motion should be denied.

*Case discharged.*

All concurred.