Kelemen v. Smith                          CV-95-501-M 02/26/97
                    UNITED STATES DISTRICT COURT

                     DISTRICT OF NEW HAMPSHIRE


Robert J. Kelemen,
       Plaintiff,

       v.

Suzette M. Smith and
Randy C. Smith,
       Defendants.
                                              Civil No. 95-501-M
Randy C. Smith,
       Cross-Claim Plaintiff,

       v.

Suzette M. Smith,
       Cross-Claim Defendant.


                            **O R D E R**


       On October 17, 1995, Robert J. Kelemen brought suit in this

court against his nephew, Randy C. Smith, and Smith's former

wife, Suzette M. Smith, to recover on a demand note dated

September 5, 1981.  Kelemen invoked this court's diversity

jurisdiction, as he is a citizen of Vermont, the defendants are

citizens of New Hampshire, and the amount in controversy exceeded

the then applicable $50,000.00 minimum requirement.  28 U.S.C. §

1332.

In addition to suing Randy Smith on the 1981 note Randy executed, Kelemen also asserts claims directly against Suzette Smith, alleging in Count II that Suzette should be deemed liable to him for one-half the amount due on Randy's note on an unjust enrichment theory. In Count III, he claims that Suzette should be held liable to him as a third party beneficiary of the decree divorcing the couple, which provided that Suzette would be "equally responsible" [along with Randy] to Kelemen if Kelemen proved the "legitimacy" of his claims on the note.

Randy Smith filed a cross-claim against his former wife, asserting three theories of recovery. In Count I, he describes an unjust enrichment claim, stating that his uncle, Mr. Kelemen, lent him the sum of $75,000.00; that the loan was intended to benefit both him and his former wife jointly; that the money was used to construct their marital residence; that both he and his former wife considered the loan a marital debt; and that his former wife would be unjustly enriched (presumably he means at his expense) were she not held liable to pay "one-half of any judgment-recovered by [Mr. Kelemen]." In Count II he asserts that his former wife "breached the parties' agreement to repay" Mr. Kelemen and, therefore, should be liable to "pay one-half of

2

any judgment recovered by [Mr. Kelemen]."  Finally, in Count III, he says that he is entitled to contribution and indemnity from Suzette in the amount of one-half of the debt owed (or, perhaps more accurately, one-half of the amount of any judgment obtained against him by Mr. Kelemen).

Defendant and cross-claim defendant Suzette Smith has moved for summary judgment as to all claims against her.

**Discussion**

I.   Robert J. Kelemen v. Randy C. Smith.

In Count I of his Amended Complaint, Kelemen asserts that he is the holder of a demand note executed by Randy C. Smith, dated September 5, 1981, in the original principal amount of $75,000. Kelemen further asserts that, on October 15, 1995, he made demand on Randy Smith for payment of $61,037.52, "being the amount then due under the Note, which demand has not been satisfied." Notwithstanding the existence of potential defenses available to him (e.g., statute of limitations bar; absence of any provision for interest in the note; and evidence of prior repayment of the entire principal amount), Randy Smith has, nevertheless, confessed judgment both in court on the record and in his

3

pleadings. Randy, in essence, agrees that he signed the note, owes the amount claimed plus interest at the rate of 12% per annum from 1981 to 1986 and 9% thereafter (the interest, he agrees, is owed pursuant to a collateral oral agreement between him and his uncle), and reaffirms the debt, waiving any available legal or equitable defenses he might have. Indeed, Randy also consented to a prejudgment attachment in favor of his uncle on his home, to secure payment of the acknowledged debt.

Accordingly, there being no genuine dispute as to any material fact, and indeed no case or controversy, between Kelemen and Randy Smith (Randy having confessed judgment), Kelemen is entitled to the entry of judgment against Randy Smith on Count I as a matter of law; no trial is required as to that "dispute." Judgment shall be entered in favor of plaintiff and against defendant Randy Smith in the amount of $61,037.52 plus interest.

II. Robert J. Kelemen v. Suzette M. Smith.

In Count II of his Amended Complaint, Mr. Kelemen sues his nephew's former wife, Suzette, on a theory of unjust enrichment. He claims that because the proceeds of the loan were used to construct the Smith marital home, and because the loan was, in

4

essence, one to both Randy and Suzette, "[i]t would be an unjust enrichment for Suzette . . . to retain the benefits provided to her through the improvement of her property via the proceeds of the note."  In Count III, Kelemen claims third-party beneficiary status under the New Hampshire Superior Court decree dissolving the Smiths' marriage.  Kelemen says that under the terms of that divorce order, Suzette Smith is liable for one-half of the amount owed on the 1981 note, if that debt is determined to be "legitimate."  Thus, he seeks to establish in this court the debt's "legitimacy" and, based upon that showing, obtain judgment against Suzette, apparently for half the amount claimed to be due.

A.    <u>Laches</u>

As an initial matter, the court notes that Kelemen cannot sue Suzette on the note, because she was never a party to it; she did not sign or make the note.  <u>See</u> N.H. Rev. Stat. Ann. ("RSA") 382-A:3-401.

Kelemen's equitable claims against Suzette are barred by the doctrine of laches.  While Kelemen's theory is not entirely clear, he seems to claim that Suzette is liable to him because

5

the Smiths used the loan proceeds to construct their marital home and, therefore, Suzette was directly benefitted by that loan. Kelemen says that it would be unjust to allow Suzette to retain any benefits from the loan without bearing a corresponding responsibility to repay it.

Because Kelemen's equitable claims against Suzette Smith are based upon her alleged "equitable" obligation to repay the note, they are roughly analogous to a suit at law on the note. Therefore, for laches analyses, the appropriate analogous limitations period is that applicable to demand notes like the one executed by Randy in 1981. "Unless it is inequitable, a court of equity in applying the doctrine of laches will follow substantially the analogy of the statute of limitations. 'As a general rule, courts of equity, equally with courts of law, are bound by the statute of limitations.'" Cote v. Cote, 94 N.H. 372, 374 (1947) (quoting Wentworth v. Wentworth, 75 N.H. 547, 550 (1910)).

When the note was made, RSA 382-A:3-122(1)(b) "provided that a cause of action occurred against the maker of a demand note . . . on the date of the note regardless of demand. Thus, the

6

limitations period began to run on the date of the note." John R. Harrington, Revised Article 3 of the Uniform Commercial Code: Some Changes to N.H. Case Law, 37 N.H. Bar Journal 1, 46 (March 1996) (citing Guild v. Meredith Village Savings Bank, 639 F.2d 25, 28 (1st Cir. 1980)). Importantly, Kelemen does not allege that he ever made demand on Suzette for payment under the note. To be sure, Kelemen asserts that he made demand on Randy Smith, on or about October 14, 1995, but does not claim that he ever made a separate demand on Suzette (the parties were divorced by a decree dated June 29, 1995, issued in an divorce action filed by Suzette in 1993). The demand note at issue was made on September 5, 1981. So, even Kelemen's demand on Randy Smith in October of 1995 occurred more than 14 years after the note was executed.

Randy Smith claims, however, that installment payments on the note were made (he says by both him and Suzette) as late as April of 1989. Then after several years, he resumed making payments, from October of 1993 until June of 1994.

The installment payments on the note through 1989 probably tolled the six year limitations period as to Randy as maker (on the legal claim). See RSA 382-A:3-118(b). Similarly, those

payments may be considered to have "equitably" tolled the laches period as to Suzette (on the equitable claim), on the theory that the payments were made by both, jointly. Nevertheless, more than six years passed since April of 1989 when payments even arguably attributable to Suzette stopped. Yet, plaintiff did not make demand on Suzette for payment before the otherwise applicable limitations period expired. In a strict sense, Kelemen did not have to "make demand" since he is not suing on the demand note, but the absence of demand on Suzette is a relevant circumstance in determining whether, in equity, he sat on his "rights" as he perceived them and so is barred by laches from recovering.

Under applicable New Hampshire law, the doctrine of laches applies to preclude Kelemen's equitable suit against Suzette, since the analogous six year statute of limitations ran as to her before suit was filed in October of 1995, regardless of how that period is calculated — from 1981 or from April of 1989. Cote, 94 N.H. at 374 ("laches is a good defense where the time elapsed is substantially more than that of the analogous statute of limitations and there is unexplained delay.")

8

B. <u>Unjust Enrichment</u>.

Even putting laches to the side, there are other obvious and compelling reasons why Kelemen's unjust enrichment claim against Suzette must fail as a matter of law. The Restatement of Restitution provides that "A person who has been unjustly enriched <u>at</u> <u>the</u> <u>expense</u> <u>of</u> <u>another</u> is required to make restitution." Restatement of Restitution, § 1 (emphasis added). That principle is in accord with New Hampshire common law. <u>See</u> <u>Della Windows & Doors, Inc. v. Faraci</u>, 133 N.H. 585 (1990); <u>Cheshire Medical Center v. W.R. Grace & Co.</u>, 764 F.Supp. 213, 218 (D.N.H. 1991), <u>vacated in part, on other grounds</u>, 767 F.Supp. 396 (D.N.H. 1991). Unjust enrichment is, of course, an equitable doctrine that requires an individual to make restitution if he or she has received a benefit which, under the circumstances, it would be unconscionable to retain. Normally, the lack of an adequate remedy at law is a critical factor which weighs in favor of affording equitable relief. <u>See, e.g.</u>, <u>Mitsubishi Int'l. Corp. v. Cardinal Textile Soles, Inc.</u>, 14 F.3d 1507, 1518 (11th Cir. 1994) ("It is axiomatic that equitable relief is only available where there is no adequate remedy at law."), <u>cert. denied</u>, 115 S.Ct. 1092 (1995); <u>Norris v. Grosvenor Marketing Ltd.</u>, 803 F.2d 1281, 1287 (2d Cir. 1986) ("An equitable claim

9

[for unjust enrichment] cannot proceed where the plaintiff has had and let pass an adequate alternative remedy at law.").

Here, as a matter of law, even viewing the undisputed facts (and the facts as alleged by Kelemen) in the light most favorable to Kelemen, Suzette Smith cannot be said to have been unjustly enriched at Kelemen's expense. If Suzette "benefitted" from the loan (in that upon divorce she was awarded part of the equity in the marital home which had been acquired in part with the loan proceeds), that "benefit" is the result of a state court decision dividing both marital property and marital obligations between her and her former husband. It is not a benefit retained at Kelemen's expense because Kelemen's position vis a vis the claimed debt remains unchanged — first, Randy will pay it and, second, if it is a "legitimate" debt and not some form of "family ruse" then it appears that the state court may well require Suzette to pay half of whatever is legitimately due. Suzette may have benefitted at Randy's expense in some sense, but only if the property division arising from the divorce action can be said, on the whole, to have been inequitable (a matter well beyond this court's jurisdiction and expertise).

10

C.    Adequate Remedy at Law.

As a matter of New Hampshire law, a party may only obtain an equitable remedy when he or she lacks a plain, adequate, and complete remedy at law.  See RSA 498:1; Sands v. Stevens, 121 N.H. 1008, 1011 (1981).  Here, it is evident that Kelemen has an adequate remedy at law to recover the full amount he claims to be owed: a suit on the note against Randy, the sole maker of the note.  In fact, Kelemen has brought that action and has successfully obtained judgment for the full amount he says is owed, which judgment is secured by a real estate attachment.[1]  In short, Kelemen has been made whole on the debt, both as he characterizes it and as Randy characterizes it.  Kelemen not only has an adequate remedy at law, he has actually obtained that remedy.  Therefore, further equitable relief is not warranted.

---

[1]  Parenthetically, the court notes that Kelemen has not alleged that Randy cannot (or does not intend to) pay the judgment against him.  Nor has he alleged that the collateral which Randy has pledged as security for the obligation is inadequate.  All indications in this record are that Randy Smith is not only willing and able to pay his obligation on the note, but is committed to doing so.

11

D.    Changed Circumstances.

And, it would be particularly inequitable on this record to permit Kelemen to now pursue an equitable unjust enrichment claim against Suzette relative to the loan/note, given that prior to his suit in this court a dramatic "change in the conditions or relations of the property or the parties involved occurred" — that is, Suzette's divorce from Kelemen's nephew, Randy.  Wood v. General Elec. Co., 119 N.H. 285, 289 (1979).  Even under Kelemen's view, the loan proceeds went to buy the house; Randy retains the house, not Suzette; Randy is obligated on the note in full; Randy has the apparent ability to pay; and the marital master (obviously sensing that the uncle and nephew might be in cahoots) provided that Suzette should have to pay half of the "marital obligation" to Kelemen only if that obligation is shown to be real or "legitimate."

E.    Federal Jurisdiction over Domestic Relations.

Finally, Kelemen's Count III puts the reality of his claims against Suzette into perspective.  He actually seeks to recover from Suzette, rather simply to recover the amount he says he is owed.  Why he is intent upon collecting half the amount from Suzette is entirely unclear, but seems to have something to do

12

with his desire to support his nephew's position relative to the divorce and the property disposition ordered by the New Hampshire Superior Court.

In her recommendation for a final decree, which was adopted by the Superior Court, the marital master recognized that Randy and Suzette borrowed money from Kelemen, but expressed some doubt about whether any amount remained unpaid and whether the debt was legitimate, as opposed to a gift now touted as a loan with interest. Significantly, the master found that the principal amount lent by Kelemen had been fully repaid, the subject note does not provide for interest on its face, and, although Kelemen and Randy testified that they had an oral agreement regarding interest (variously described in the pleadings as originally 12% reduced later to 9%, and as 10%), Suzette was not involved in those discussions. The master refused to permit Kelemen to intervene in the divorce proceeding to enforce his note or his equitable claim against Suzette. Instead, the master divided the marital property and obligations between the parties to the divorce action — requiring the marital residence to be sold (Randy bought it) and the net proceeds divided equally between Randy and Suzette. The master further provided:

> As far as Mr. Kelemen is concerned, the Court suggests that he may need to file a separate action in order to determine the legitimacy of any claim he may have and, if he is successful, <u>for purposes of this divorce proceeding only, the parties shall be equally responsible to Mr. Kelemen for any debt due and owing.</u> This does not prohibit another trial court from making orders regarding either parties' responsibility to Mr. Kelemen under civil collection remedies. (emphasis added).

Relying on that language, Kelemen says in Count III of his Amended Complaint that he is a "third-party beneficiary" of the order and thus has standing to enforce it against Suzette by: (i) demonstrating the "legitimacy" of the debt in this court; and, (ii) obtaining judgment here against Suzette in the amount of one-half the debt he says remains due and owing. Despite his claims to the contrary, Kelemen is not, under any theory, a "beneficiary" of the divorce decree — the decree only speaks to and only affects the legal rights of the divorcing parties; the marital master made that point very clear.

Besides, it is settled that federal courts are entirely without authority (under the domestic relations exception) to exercise diversity jurisdiction under 28 U.S.C. § 1332 over a matter involving a divorce decree. So, to the extent consideration of the claims set out in Kelemen's Count III would

14

involve this court in either construing or enforcing the New Hampshire Superior Court's divorce decree in <u>Smith v. Smith</u>, the court is without jurisdiction. <u>Ankenbrandt v. Richards</u>, 504 U.S. 689 (1992). To the extent either Kelemen or Randy Smith seeks to have this court construe or enforce a division of property order, that subject matter falls squarely within what Justice Blackmun called the "semicore" category of issues falling within "domestic relations." <u>Id.</u> at 716 (Blackmun, J., concurring).

III. <u>Randy Smith v. Suzette Smith</u>

Randy Smith's cross-claims against Suzette, though couched in terms of "unjust enrichment," "breach of an agreement to repay," and "contribution and indemnity" relative to the Kelemen note, are obvious and transparent. What Randy Smith actually seeks is a federal restructuring of the marital property distribution imposed by the Superior Court. In short, he is pursuing a judgment from this court against his former wife requiring her to pay his uncle (Kelemen) one-half of the amount claimed to be still due on the 1981 note, or, at least requiring her to reimburse him (Randy) for one-half of that amount since he is, by confession, obligated on that note.

15

There is no dispute that the monies lent under the 1981 note were used to purchase the marital home.  But, the parties are divorced, and the state court exercised its exclusive jurisdiction to divide both the marital assets and the marital obligations between the Smiths.  Mr. Smith cannot relitigate that ordering of marital assets and debts in a federal court on a supplemental jurisdiction cross-claim, in a diversity jurisdiction case, for at least two reasons: (i) this court has no jurisdiction over domestic relations matters, and the division of marital property and obligations between husband and wife is quintessentially a domestic relations matter, Ankenbrandt v. Richard, supra; and (ii) as between Randy and Suzette Smith, all assets, debts, and obligations arising out of or related to their marriage have already been finally adjudicated by a state court of competent jurisdiction, thus the doctrine of res judicata precludes redetermination of any issues related to the allocation of their marital assets and liabilities as between them even if, as Randy Smith alleges, the Superior Court's order is the subject of a pending appeal.  See Daigle v. City of Portsmouth, 129 N.H. 561, 571 (1987) (noting that the better view is that a judgment is "final" for purposes of res judicata (issue preclusion)

16

despite the taking of an appeal).  <u>See also</u> Restatement (Second) Judgments §§ 13, 27 (1982).

<u>Conclusion</u>

The real interest of Mr. Kelemen and Mr. Smith seems unmistakable — they want Suzette to pay half the amount they agree, between them, is owed on the 1981 note.  Perhaps, as between Suzette and Randy Smith, she may well be required to pay half, but only if the Superior Court construes its property division order as requiring her to do so, now that Mr. Kelemen has obtained judgment against Randy on the note.  But, whether the judgment allowed today qualifies, under the divorce decree, as establishing the "legitimacy" of the debt owed Kelemen on the note for purposes of imposing the reimbursement obligation on Suzette referenced in the decree is a question that can only be answered by the Superior Court.  It is the Superior Court, and not this federal court, that has exclusive jurisdiction to construe its domestic relations order, and it is that court that must decide whether Randy Smith's waiver of potential defenses and confession of judgment on Kelemen's claims in this court is the sort of "success" in establishing the "legitimacy" of the claim that the Superior Court envisioned as triggering an

17

obligation on Suzette's part to repay (or reimburse Randy for) half the amount due (the "amount due" being the product of an agreement between uncle and nephew). One can easily think of an argument or two against such a construction, but that is neither here nor there in this forum — this court simply cannot decide the issue. Ankenbrandt v. Richards, supra. The parties will have to pursue Suzette's contribution obligations, if any, in the Superior Court.

Randy Smith's cross-claims against Suzette Smith are dismissed for want of jurisdiction over domestic relations matters and, in any event, because they are barred by the doctrine of res judicata. Plaintiff Kelemen's claims against Suzette Smith are dismissed because: (i) they are barred by laches; (ii) Suzette Smith was not unjustly enriched at his expense; (iii) Kelemen is not entitled to equitable relief as a matter of law since he has (and, in fact, has obtained) an adequate remedy at law to collect the monies he says he is owed; (iv) it would be inequitable to allow Kelemen to pursue an equitable claim against Suzette since the divorce and marital property distribution order substantially altered the relationship of the parties and property involved well before

18

Kelemen brought suit; and, (v) the court is without jurisdiction over Kelemen's claims as described in Count III.

Defendant and cross-claim defendant's motion for summary judgment (document no. 25) is granted as to all claims against Suzette only. Judgment shall be entered in favor of plaintiff and against defendant Randy smith in the amount of $61,037.52 plus interest.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

February 26, 1997

cc: Steven A. Solomon, Esq.
    Kevin E. Sharkey, Esq.
    Randy C. Smith, .Esq.

19